## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TOOR PETROLEUM, INC.,

      Plaintiff,

vs.

MARATHON PETROLEUM
COMPANY LP,

      Defendant.

Case No. 1:11-cv-461

Judge Timothy S. Black

## ORDER THAT PLAINTIFF'S MOTION FOR A
## PRELIMINARY INJUNCTION (Doc. 7) IS DENIED

This civil action is currently before the Court on Plaintiff's motion for a

preliminary injunction (Doc. 7) and the parties' responsive memoranda (Docs. 18, 19).

### BACKGROUND

Defendant Marathon Petroleum Company LP ("Marathon") is engaged in the

business of refining and selling petroleum products, including Marathon branded motor

fuels.  (Doc. 18 at 1).  Plaintiff Toor Petroleum Inc. ("Toor") is an Ohio corporation

engaged in the business of retail gasoline sales.  (Doc. 7 at 2).  Jagroop S. Toor is the

President of Toor.  (Doc. 18 at 3).  In the course of business, Marathon enters into

franchise agreements with owner-operators of retail gasoline stations to use Marathon

trademarks and sell marathon branded petroleum products.  (Doc. 18 at 1).

Toor signed its first franchise agreement with Marathon in 2003 to operate a retail

station in Hamilton, Ohio ("the Dixie Store").  (Doc. 17 at 3).  At the time, Marathon

offered two types of standardized fuel supply and trademark agreements: "Seller Agreements" and "Owner-Operator Agreements." (*Id.*). Marathon also offered two types of pricing structures in the agreements: dealer tankwagon pricing and jobber rack pricing. (*Id.* at 2-3). Toor and Marathon initially entered into a Seller Agreement with dealer tankwagon pricing. (*Id.*). The parties renewed the agreement with dealer tankwagon pricing several times. (*Id.* at 3; Doc. 7 at 3). Additionally, under the terms of the current contract, Toor must purchase a minimum of 360,000 gallons of motor fuel directly from Marathon each year. (Doc. 7 at 3). This agreement expires on September 30, 2011. (*Id.*).

In May 2005, Toor purchased a separate retail station in Fairfield, Ohio from Marathon ("the River Road Store"). (Doc. 7 at 3). The contract and the deed transferring the property to Toor contained restrictions on Toor's future sale or lease of the River Road Store. (*Id.*). Toor and Marathon subsequently entered into a franchise agreement for the River Road Store. (Doc. 18 at 3). That franchise agreement provided for jobber rack pricing. *Id.*

In July 2009, Marathon learned that Toor had entered into a contract to sell the River Road store and began making inquiries as to whether Toor had breached the 2005 contract restricting the future sale of the store. (Doc. 7 at 3-4). On June 21, 2010, Marathon sent Toor a letter requesting inspection of Toor's books to determine if Toor had breached the contract. (*Id.* at 4). The parties had several discussions regarding the dispute, and Mr. Toor alleges that in those conversations Marathon urged him to change

-2-

Dixie Store pricing from dealer tankwagon pricing to the jobber rack pricing. (*Id.*). Mr. Toor asserts that during one such discussion, Marathon affirmatively told him that the dispute over the River Road contract would be resolved if Toor agreed to change the Dixie Store pricing structure. (*Id.*).

Ultimately, the franchise agreement for the River Road Store expired on September 30, 2010 and was not renewed. (*Id.* at 4).

In 2009, Marathon made a marketing decision to offer a single motor fuel supply/trademark license agreement to all Owner-Operators, and began offering only Owner-Operator Agreements with jobber rack pricing. (Doc. 18 at 4).  Marathon no longer offers Seller Agreements. (*Id.*).  In anticipation of the September 2011 expiration of the Dixie Store franchise agreement, Marathon sent Toor a proposed renewal notice in April 2011. (*Id.*).  The proposed renewal included several changes from the past agreement, most notably a switch from a Seller Agreement to an Owner-Operator Agreement, a 390,000 gallon per year increase in the minimum purchase requirement, and a change to jobber rack pricing. (*Id.* at 4).  Marathon informed Toor that the franchise agreement would not be renewed without Toor's agreement to the proposed terms. (Doc. 7 at 4).

On April 26, 2011, Toor sent Marathon a letter claiming that the proposed renewal agreement was not in good faith or in the normal course of business and alleging that the changes were in retaliation for the dispute over the River Road Store. (Doc. 18 at 5).

-3-

Marathon responded that Toor had been provided the standard form Owner-Operator contract, and that the minimum gallon requirement and jobber rack pricing were offered in the normal course of business. (*Id.*). On June 22, 2011, counsel for Toor verbally informed Marathon that Toor would not accept the proposed renewal agreement, and would await the nonrenewal and file suit challenging the nonrenewal. (*Id.*). On June 24, 2011, Marathon provided written notice of the nonrenewal of the franchise relationship, effective September 30, 2011. (*Id.*).

Toor filed this lawsuit on July 11, 2011, alleging that Marathon's failure to renew the franchise agreement constituted a violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, et seq. (Doc. 1 at ¶¶ 28-34). Toor subsequently filed the instant motion, seeking a preliminary injunction preventing Marathon from terminating the franchise agreement and an order requiring Marathon to continue the franchise relationship on the existing terms and conditions pending the outcome of the litigation. (Doc. 7 at 10).

## ANALYSIS

### A.    Applicable Legal Standard

The PMPA establishes minimal federal standards governing the termination and nonrenewal of petroleum franchise agreements. *Mac's Shell Serv., Inc. v. Shell Oil Prod. Co. LLC*, 120 S.Ct. 1251, 1255 (2010). The act "affords franchisees important but limited procedural rights, while allowing franchisors significant latitude in responding to

-4-

changing market conditions." *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 905 (7th Cir. 1997).

The PMPA includes a provision allowing preliminary injunctive relief based upon a lesser showing than would ordinarily be required under Fed. R. Civ. P. 65. *Beachler*, 112 F.3d at 905. A district court "shall" grant a preliminary injunction in suits alleging a PMPA violation if:

> (A)    the franchisee shows-
>
> > (i)    the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and
> > (ii)    there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and
>
> (B)    the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C.§ 2805(b)(2) (2011).

Although the statute "substantially relaxes the normal standard for obtaining the injunctive relief," plaintiff must still demonstrate "a reasonable chance of success on the merits." *Mac's Shell*, 130 S.Ct. at 1263 N. 12; *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir. 1984). Injunctive relief will not be issued as a matter of course, and if plaintiff's questions "do not make fair grounds for litigation or a reasonable chance of success, the injunction should not issue." *Saad v. Shell Oil Co.*, 460 F. Supp. 114, 117 (E.D. Mich. 1978).

**B.  Plaintiff has failed to demonstrate sufficiently serious questions going to the merits to make such questions a fair ground for litigation.**

It is undisputed that the Dixie Store franchise has not been renewed, and thus the central question is whether Toor has raised "sufficiently serious questions" suggesting that Toor has violated the PMPA to require a preliminary injunction. (Doc. 7 at 6, Doc. 17 at 6).

Under the PMPA, a franchise may only be terminated or non-renewed for specific statutorily enumerated reasons. *Potter v. Ashland Oil, Inc.*, No. 89-6045, 1990 WL 86467, at *1 (6th Cir. 1990) (citing 15 U.S.C. 2802 §§ (a)-(b)). Among the permissible grounds for non-renewal is the failure of the parties to agree to changes or additions to the franchise agreement that are the "result of determinations made by the franchisor in good faith and in the normal course of business." 15 U.S. C. § 2802(b)(3)(A) (2011). In evaluating a claim, the court must engage in a two pronged analysis, determining both whether the franchisor's determination was made in good faith and whether it was done in the normal course of business. *Duff v. Marathon Petroleum Co.*, 51 F.3d 741, 744 (7th Cir. 1995). If both criteria are met, the franchisee cannot establish a violation of the PMPA. *Id.*

The purpose of the good faith test is to "provide adequate protection of franchisees from arbitrary or discriminatory termination." *Massey v. Exxon Corp.*, 942 F.2d 340, 345 (6th Cir. 1991). The question of good faith is a subjective inquiry, and "so long as the franchisor does not have a discriminatory motive or use the altered terms as a pretext to

avoid renewal the franchisor has met the burden required by the PMPA for determining good faith." *Id.*  The normal course of business inquiry requires an examination of the franchisor's normal decision-making process. *Duff,* 51 F.3d at 744.

While Toor correctly asserts that Marathon bears the burden of establishing that it acted in good faith an in the normal course of business,[1] Marathon has satisfied that burden. (Doc. 7 at 7; *Duff,* 51 F.3d at 744).  Marathon made a marketing decision in the fall of 2009 to offer a single franchise agreement to all Owner-Operators. (Doc. 18, Ex. A at ¶ 13).  Since that time, all renewing franchise agreements have had the opportunity to renew with an Owner-Operator Agreement, but not a Seller Agreement. (*Id.*).  Toor was offered the same Owner-Operator Agreement provided to all other Marathon Owner-Operators, all of which included jobber rack pricing and the 750,000 gallon minimum purchase requirement. (*Id.* at ¶ 15).  Because Toor was offered the same terms consistently extended by Marathon in the normal course of business, Marathon has demonstrated that it acted in good faith and the normal course of business. *See Duff,* 51 F.3d at 628-634 (rejecting plaintiff's allegation that his nonrenewal was in retaliation for a personal injury claim because he was offered a standard contract); *Bucklew v. Std. Oil Co.,* No. 86-3924, 1987 WL 38149, at *2 (6th Cir. 1987) (holding that plaintiff failed to establish a violation of the PMPA when plaintiff was subject to the same terms as every other franchisee).

---

[1] Under the PMPA, the franchisee bears the initial burden of establishing that the franchise has been terminated or not renewed.  The franchisor then bears the burden of establishing that it is entitled to one of the statute's affirmative defenses. *Duff,* 51 F.3d at 744.

Here, Plaintiff has not raised any sufficiently serious questions to demonstrate that Marathon has not acted in good faith in the normal course of business.  A mere allegation of bad faith is not sufficient to establish a reasonable chance of success on the merits. Given that Marathon has demonstrated that it acted in good faith and in the normal course of business, Toor has failed to raise sufficiently serious questions going to the merits to make such questions a fair ground for litigation.

And, as Toor has failed to raise sufficiently serious questions going to the merits of the litigation, it is unnecessary for the Court to balance the hardships faced by the parties.

## CONCLUSION

Accordingly, for the reasons stated herein, Plaintiff's motion for a preliminary injunction (Doc. 7) is **DENIED**.

**IT IS SO ORDERED.**

Date: 9/16/11

Timothy S. Black
United States District Judge

-8-